UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMUEL J. TROPHIA and
SHANE T. HALL,

    Plaintiffs,

v.                                         Case No: 8:22-cv-00128-CEH-AEP

CAMPING WORLD, INC.,

    Defendant.
_____/

## ORDER

    This cause comes before the Court upon Defendant Camping World, Inc.'s Motion to Dismiss Plaintiffs' Complaint (Doc. 6), to which Plaintiffs Samuel J. Trophia and Shane T. Hall respond in opposition (Doc. 7).

    In need of a new mat to use at campsites and to place outside of his recreational vehicle, Samuel J. Trophia purchased a "Venture Forward" diamond mat from Camping World, Inc. On the same day as his purchase, he traveled to a campsite in Dade City, Florida, with his husband. At the campsite, Trophia installed the new mat outside, and at the exit, of his RV. A light rain fell while he was inside the RV. After the rain stopped, he exited the RV and slipped once he stepped onto the new mat, resulting in a fracture of his right femur. Joined by his husband, he now sues Camping World. Camping World moves to dismiss. For the reasons set forth below, the Court will grant-in-part and deny-in-part the Motion to Dismiss.

## I. FACTUAL BACKGROUND[1]

Camping World, Inc., designs, distributes, markets, and sells products to consumers in Florida. Doc. 1 ¶5. The company has applied its "Venture Forward" trademark to a line of products for outdoor enthusiasts. *Id.* As the largest retailer of recreational vehicles and related products in the country, Camping World operates approximately 170 retail locations and touts the best and most comprehensive assortment of RV products, resources, and services. *Id.* at ¶6.

Samuel J. Trophia and his husband, Shane T. Hall, own a 42-foot RV, which they use to travel and camp. *Id.* at ¶7. On March 29, 2021, Trophia visited Camping World's store in Ft. Myers, Florida, to purchase a new mat to use at campsites and to place outside, and at the exit, of the RV. *Id.* at ¶8. Previously, Trophia used a mat made of sisal, but it had become worn and dirty from outdoor use. *Id.* at ¶9. While at the store, Trophia purchased a "Venture Forward 6 x 9 Diamond Mat" after reviewing an informational insert included with the mat. *Id.* at ¶10. Trophia concluded that the mat "would be more durable, more weather resistant, easier to clean, and dry more quickly than his prior sisal mat." *Id.*

The Informational Insert features Camping World's "Venture Forward" trademark and identifies "CWI, Inc."—one of the names under which Camping

---

[1] The facts are derived from the Complaint, the factual allegations of which the Court must accept as true in ruling on the Motion to Dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

World conducts business in Florida—as the distributor of the mat.[2] *Id.* at ¶12; Doc. 1-1 at 1. Trophia and Hall attached a copy of the Informational Insert to the Complaint (Doc. 1-1). The Informational Insert depicts the mat being used outside, and at the exit, of an RV. Doc. 1 ¶12; Doc. 1-1 at 1. As shown on the copy attached to the Complaint, the Informational Insert contains, in relevant part, this language:

> **6X9 DIAMOND MAT**
>
> Heavy weight 6'x9' mat with tight weaving & reinforced stitching for long lasting durability
>
> Heavy duty piping on two sides with reinforced corner & stake loops (stakes sold separately)
>
> UV coated polypropylene material for weather & fade resistant
>
> Care Instructions:
> Use mild detergents to wash mats and spray clean with hose. Dries quickly. Mats fold easy for storage.

Doc. 1-1 at 1.

Thus, the Informational Insert offers these representations about the mat: (1) "Heavy weight 6' x 9' mat with tight weaving & reinforced stitching for long lasting durability"; (2) "UV coated polypropylene material for weather & fade resistant"; and (3) "Use mild detergents to wash mats and spray clean with hose. Dries quickly." Doc. 1 ¶12.

---

[2] Camping World conducts business in Florida under the names "CWI, Inc." and "Gander Outdoors." Doc. 1 ¶5. Trophia and Hall allege that the Informational Insert identifies Camping World as the mat's distributor, *id.* at ¶12, but the copy of the Informational Insert that they attach to the Complaint expressly identifies CWI, Inc., as the distributor of the mat, Doc. 1-1 at 1.

Later on the same day, Trophia and Hall visited a campsite in Dade City, Florida, where Trophia placed the mat "outside and at the exit of his RV" in a position like that depicted in the Informational Insert. *Id.* at ¶13. Trophia then entered the RV. *Id.* at ¶14. A light rain fell while he was inside the RV. *Id.* Approximately 30 minutes later, and after the rain had stopped, he exited the RV. *Id.* at ¶15. He "took a single step onto [Camping World's] polypropylene mat with his right foot, and slipped forcefully and awkwardly, thereby sustaining a severely comminuted fracture of his right femur." *Id.* Since the slip, Trophia has undergone two comprehensive surgeries and continues to undergo medical treatment to restore his ability to walk without assistance, pain, or restrictions. *Id.* at ¶16.

While in the hospital in early-April of 2021, Trophia telephoned Camping World's store in Ft. Myers and notified some of Camping World's customer-service representatives of his injury and the defective nature of the mat. *Id.* at ¶17. In response, Trophia "was told to await a return call by the store manager." *Id.* But neither the store manager nor any representative of Camping World returned his telephone call. *Id.* at ¶18. As a result, Trophia (along with his husband, Hall) retained legal counsel, who wrote a letter to Camping World's chief executive officer on May 7, 2021. *Id.* This letter detailed Trophia's purchase and use of the mat, the mat's defective nature, and Trophia's injury. *Id.* In addition to referencing Trophia's telephone call to the Ft. Myers store, the letter from Trophia's counsel asked Camping World to remove the

4

mat from its sales inventory. *Id.*; Doc. 1-2 at 1–2. Neither Trophia nor his counsel received any response from Camping World. Doc. 1 ¶20.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, the Court need not accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.   DISCUSSION

Trophia and Hall bring the following claims against Camping World: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) strict liability; and (4) negligence. Doc. 1 at ¶¶21–60. Additionally, within each of these claims, Trophia and Hall allege that, because of damage and injury sustained by Trophia, the defective mat or Camping World's negligence "directly and proximately

5

caused a loss by" Hall "of his spouse's consortium, companionship, society, support, and services." *Id.* at ¶¶29, 40, 52, 60.

Camping World moves to dismiss under Rule 12(b)(6), arguing that each claim must fail and that Hall must bring a separate claim for loss of consortium. Doc. 6 at 6–16. Trophia and Hall respond in opposition (Doc. 7). As explained below, Camping World's arguments are unavailing, except for its loss-of-consortium argument.

### A. Hall Must Bring a Separate Claim for Loss of Consortium

The Court will address Camping World's loss-of-consortium argument first. Camping World argues that Hall improperly joins in each claim because the allegations indicate that Hall's only prospective claim is a loss-of-consortium claim. Doc. 6 at 15. Camping World contends that Hall should have brought a separate claim for loss of consortium. *Id.* The Court agrees.

Hall joins Trophia in all four claims. Trophia and Hall allege in each claim that the purportedly defective mat or Camping World's negligence "directly and proximately caused a loss by [Hall], of his spouse's consortium, companionship, society, support, and services." Doc. 1 ¶¶ 29, 40, 52, 60.

Under Florida law, "[w]hile spousal consortium claims are derivative in nature, they are nevertheless separate and distinct causes of action." *Castro v. Linfante*, 307 So. 3d 110, 112 (Fla. 3d DCA 2020). "Separate and distinct" means that "a spouse can maintain a consortium claim in situations where there has not been joinder of the injured spouse, or where the injured spouse has executed a consent judgment or a release as to his or her claim," not that this derivative claim can exist without a primary

6

claim. *Randall v. Walt Disney World Co.*, 140 So. 3d 1118, 1120 (Fla. 5th DCA 2014) (quoting *ACandS, Inc. v. Redd*, 703 So. 2d 492, 494 (Fla. 3d DCA 1997)).

Here, Trophia and Hall explain that Hall's claim for loss of consortium "is presented within each of these counts for orderliness" because the claim depends upon the viability and success of the primary counts. Doc. 7 at 13. In other words, Hall joins Counts I through IV to tag a loss-of-consortium claim onto the other claim within each of those counts. Trophia and Hall argue that a catch-all claim for loss of consortium would comingle all four of Trophia's claims and would "not provide any orderliness." *Id.* at 13. But they do not provide any legal authority for this proposition. Indeed, spouses frequently bring catch-all claims for loss of consortium. *See, e.g.*, *Ocasio v. C.R. Bard, Inc.*, No. 8:13-cv-1962-CEH-AEP (M.D. Fla.), Doc. 1; *Byrnes v. Small*, 8:14-cv-1726-CEH-MAP (M.D. Fla.), Doc. 2; *Ramirez v. Judd*, No. 8:12-cv-2819-CEH-E_J (M.D. Fla.), Doc. 69. Because any claim for loss of consortium will be derivative, Hall will recover if Trophia recovers. *See Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971) ("We further hold that [a wife's] right of action [for loss of consortium] is a derivative right and she may recover only if her husband has a cause of action against the same defendant."). And Hall need only plead a claim for loss of consortium once. *Sherba v. Wright Med. Tech., Inc.*, No. 8:07-cv-352-SDM-TBM, 2007 WL 9723867, at *2 (M.D. Fla. July 23, 2007); *see Rees v. Engineered Controls Int'l, Inc.*, No. 6:06-cv-1558-PCF-JGG, 2006 WL 3162834, at *3 (M.D. Fla. Nov. 2, 2006) (explaining that the plaintiff-spouse "may not plead multiple causes of action for loss of consortium"). Finally, because a claim for loss of consortium is a separate claim, combining that claim with

another claim under the same count raises shotgun-pleading concerns. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (identifying one type of shotgun pleading as a pleading that "commits the sin of not separating into a different count each cause of action or claim for relief").

As such, Hall must bring a separate claim for loss of consortium if he wishes to pursue that type of claim in this action. Because he joins Counts I through IV as a result of embedding a claim for loss of consortium within each claim, the Court will dismiss Counts I through IV, without prejudice, only to the extent that Hall brings them. The Court will grant Hall and Trophia leave to file an amended complaint. If they fail to file an amended complaint within the provided time, this action will proceed on Counts I through IV by Trophia only against Camping World.

### B. Camping World's Arguments for Dismissing the Breach-of-Warranty Claims Fail

As mentioned above, Trophia and Hall bring two breach-of-warranty claims against Camping World: (1) a claim for breach of express warranty; and (2) a claim for breach of implied warranty of merchantability.

#### i. Breach-of-Express-Warranty Claim

To state a claim for breach of express warranties under the Florida Uniform Commercial Code, a plaintiff must allege: "(1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of express warranty." *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1339 (S.D. Fla. 2011) (citing *Dunham-Bush,*

8

*Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977)). Section 672.313 of the Florida Statutes details a seller's creation of express warranties. Fla. Stat. § 672.313(1).[3] The seller need not use the words "warrant" or "guarantee" to create an express warranty, nor need the seller specifically intend to create a warranty. *Id.* § 672.313(2).

After conceding that the allegations here satisfy the first, second, and fourth elements, Camping World contends that Trophia and Hall fail to "demonstrate that the noted warranties were breached or were otherwise relevant" to this action. Doc. 6 at 6–7. As such, Camping World focuses on the third and fifth elements. *Id.* at 8. Camping World argues that the Court need not accept the allegations in the Complaint that the warranties on the Informational Insert are "relevant" or that Trophia "used the product as illustrated." *Id.* But, of course, the Court must accept as true the Complaint's factual allegations in ruling on this Rule 12(b)(6) motion. *See Erickson*, 551 U.S. at 94. In an effort to persuade the Court not to accept the allegations, Camping World offers "a color copy of the [I]nformation[al] [I]nsert attached as Exhibit A" to the Complaint. Doc. 6 at 9. Camping World contends that the "black-and-white copy attached to the Complaint distorts the clarity of the image" and that

---

[3] "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Fla. Stat. § 672.313(1)(a). Similarly, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* § 672.313(1)(b). And "[a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." *Id.* § 672.313(1)(c).

"[t]his image depicts that same [I]nformational [I]nsert as" Exhibit A to the Complaint "in its original form." *Id.* at 6 n.2.

But Trophia and Hall attach a color copy, not a black-and-white copy, of the Informational Insert to the Complaint. Doc. 1-1 at 1. Thus, Camping World's basis for the Court's consideration of Camping World's version of the Informational Insert—that the quality of the copy distorts the image's clarity—lacks merit. Additionally, the copy that Trophia and Hall attach to the Complaint is larger than the image provided by Camping World. Thus, while Camping World's image may depict the same information as the Informational Insert attached to the Complaint, the size of the image differs.[4]

Ordinarily, a court must treat a Rule 12(b)(6) motion as a motion for summary judgment if a party presents "matters outside the pleadings" to the Court and the Court does not exclude those matters. Fed. R. Civ. P. 12(d). However, "a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Other than size of the image, the document attached to the motion to dismiss is the same as the document attached to the complaint at Doc. 1-1.

Generally, as Camping World highlights, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v.*

---

[4] When viewing the imagine electronically, the user may adjust the size of the image.

10

*Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (internal quotation marks omitted). But Camping World champions its own interpretation of the Informational Insert to attack this claim. In a two-page analysis nearly devoid of any legal authority, Camping World argues that "there is no reasonable indication that the subject mat is represented to operate as an entry/exit mat." Doc. 6 at 10–11. Camping World argues that the Informational Insert does not expressly "liken[]" the product to an entrance mat and that the Informational Insert depicts a gap between the mat at the RV "such that one leaving the door would step onto the ground before stepping onto the mat." *Id.* at 10. Camping World also contends that the mat's size and material are "clearly different than anything that would commonly be regarded as an entrance mat." *Id.* Continuing with its own interpretation, Camping World argues that the Informational Insert's representation that the mat folds easily for storage "suggests" that the mat is "not intended to be left lying around indefinitely." *Id.* As such, Camping World asserts that the "only reasonable interpretation," based on the Informational Insert, is that the mat "is used to provide a clean sitting/standing area for people who wish to spend time outdoors, which is great for anyone who sets up camp with an RV (but would equally be suited for people attending outdoor concerts, attending picknicks [sic], etc.)." *Id.*

Thus, Camping World concludes that the product is not "reasonably regarded as an entrance mat" based upon its own interpretation of the Informational Insert. That "reasonable interpretation" is rife with speculation, such as Camping World's reasoning that the Informational Insert's language about the mat's folding ability suggests that the mat is "not intended" to be "left laying around indefinitely," and

11

unsupported propositions, such as Camping World's assertion that the size and material of the mat differ from anything that would "commonly be regarded as an entrance mat." Not surprisingly, Trophia and Hall interpret the Informational Insert differently. Doc. 7 at 7–9. For example, Trophia and Hall argue that the RV depicted in the Informational Insert has its stairs retracted, but, when deployed, the stairs would extend beyond the edge of the RV and would land upon the mat. *Id.* at 7.

Further, some of Camping World's arguments are factual attacks that lack support, such as Camping World's argument that the mat's size and material differ from "anything that would commonly be regarded as an entrance mat." These types of factual attacks do not belong in a Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 677–78. The Court will not rely on Camping World's disputed, speculative interpretation of the Informational Insert to determine that this claim lacks plausibility or that the Informational Insert contradicts the Complaint's allegations.[5]

Focusing on the language of the Informational Insert, Camping World argues that the "long lasting durability," "heavy duty," and "weather & fade resistant" language "obviously pertains" to the mat's "life-expectancy." Doc. 6 at 11. But this interpretation is not "obvious[]" such that—as Camping World contends—someone could not "reasonably" interpret the Informational Insert to "relieve customers of any

---

[5] For all of these reasons, Camping World's argument that the allegation that Trophia took a "single step" from the RV onto the mat "proves" that "no significant gap between the RV and [the] mat" existed is unavailing. Doc. 6 at 10. Similarly, Camping World's contention that the allegedly wet mat "demonstrates" that Trophia and Hall did not cover the mat, even though an RV awning covers the mat in the Informational Insert, also fails. *Id.*

12

risks associated with slipping on the mat when it is wet." *Id.* Indeed, the Informational Insert states that the mat is weather resistant. Next, Camping World contends that Trophia and Hall's allegation that Trophia purchased the mat as a result of his prior mat becoming worn and dirty from outside exposure "proves" that Trophia knew that the warranties related to the "products [sic] longevity." *Id.* However, Camping World fails to offer any comparison between the two mats, and Trophia and Hall allege that the prior mat was made of sisal while this mat was made of polypropylene.

Finally, Camping World argues that the Informational Insert's representations that the mat is weather resistant and that the mat will dry quickly "could not reasonably be understood to mean that the mat would not be wet within approximately 30 minutes of raining." *Id.* Camping World fails to explain why a buyer could not reasonably understand the representation that the mat is "weather resistant" to mean that the mat would not be wet within approximately 30 minutes of raining. This argument is conclusory. To be sure, the Informational Insert's representation that the mat "[d]ries quickly" falls under "Care Instructions" and follows a sentence that discusses using mild detergents to wash the mat and spraying the mat with a hose. But Camping World fails to explain why a buyer could not reasonably interpret the Informational Insert's representation that the mat will dry quickly after being soaked with water to mean that it would not be wet within approximately 30 minutes of a rain storm. This argument is conclusory, too, and, like the rest of the discussion, lacks supporting legal authority. Thus, these arguments fail.

Because Camping World's argument for dismissing this claim fails and Camping World fails to offer any other argument for dismissal, this claim survives to the extent that Trophia brings it.

> ii. *Breach-of-Implied-Warranty-of-Merchantability Claim*

Next, in an argument that spans half a page, Camping World moves to dismiss the breach-of-implied-warranty claim. *Id.* at 12. "A cause of action for breach of implied warranty of merchantability requires allegations that (1) the plaintiff was a foreseeable user of the product, (2) the product was used in the intended manner at the time of the injury, (3) the product was defective when transferred from the warrantor, and (4) the defect caused the injury." *Jovine*, 795 F. Supp. 2d at 1340 (citing *Amoroso v. Samuel Friedland Fam. Enters.*, 604 So. 2d 827, 833 (Fla. 4th DCA 1992)). Camping World argues that Trophia and Hall's allegations fail to satisfy the second element because, as described in Camping World's argument for the breach-of-express-warranty claim, their allegations "demonstrate that they did not install the subject mat as intended." The Court rejected this argument above. Therefore, because this argument fails and Camping World does not offer another argument for dismissal of this claim, this claim survives to the extent that Trophia brings it.

### C. Camping World's Arguments for Dismissing the Strict-Liability Claim Fail

Camping World also moves to dismiss the strict-liability claim. It argues that Trophia and Hall have not identified any expert who has established that the mat was

14

defective.⁶ Doc. 6 at 13. In support of this argument, Camping World cites to *Mendez v. Jarden Corporation*, in which the court stated that the plaintiff's "failure to offer expert evidence forecloses any claim based on a design defect." No. 10-80966-CIV, 2011 WL 13227892, at *4 (S.D. Fla. Sept. 7, 2011) (internal quotation marks omitted). But the court in *Mendez* recited this principle when ruling upon the defendant's motion for summary judgment. *Id.*⁷ There, the defendant argued that, because the plaintiff failed to disclose the existence of any expert who was willing to support her claim that the product was defective, she could not sustain her *burden of proof* on any of her claims against the defendant. *Id.* The court granted the defendant's motion for summary judgment. *Id.* at *5.

As Trophia and Hall highlight, Camping World has confused pleading standards with evidentiary standards. Camping World has not provided the Court with any binding authority that stands for the proposition that a plaintiff who brings this type of claim must identify, at the pleading stage, an expert who has established that the product was defective. Again, in ruling upon a Rule 12(b)(6) motion, the Court

---

⁶ The heading for Camping World's argument against this claim states that "Plaintiffs' strict products liability claim must fail because the subject mat was not defective, nor has Plaintiff identified that any expert has established same." Doc. 6 at 12. But Camping World offers no reasoning or analysis as to why the mat was not defective in its attack on this strict-liability claim. Thus, Camping World does not sufficiently raise this argument.

⁷ Further, the courts in the cases to which *Mendez* cited for this proposition ruled upon motions for summary judgment. *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1225 (M.D. Fla. 2009); *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1303 (M.D. Fla. 2011); *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999).

15

analyzes only the plausibility of the claims. *See Iqbal*, 556 U.S. at 677–78. Therefore, this claim will survive to the extent that Trophia brings it.

### D. Camping World's Arguments for Dismissing the Negligence Claim Fail

Camping World argues that the negligence claim must fail. First, Camping World contends for a plaintiff to "succeed" on a negligence claim rooted in products liability, he or she must provide expert testimony demonstrating that the product was defective and evidence that the product caused the injury of which he or she complains. Doc. 6 at 14. Once again, Camping World cites to *Mendez*. *Id.* As explained above, however, the court in *Mendez* ruled upon the defendant's motion for summary judgment. 2011 WL 13227892, at *4. And, like above, Camping World fails to provide any binding authority standing for the proposition that a plaintiff who brings this type of claim must identify, at the pleading stage, an expert who has established that the product was defective or evidence that the product caused the injury. Thus, this argument fails.[8]

In *Carter v. Hector Supply Co.*, the Supreme Court of Florida explained that "a retailer could be held liable to a third party in a negligence action as contrasted by absolute liability under an implied warranty only if the retailer could be charged with

---

[8] The heading of Camping World's argument against this claim states: "Plaintiffs' negligence claim must fail because the subject mat was not defective, nor has Plaintiff identified any facts which might indicate that Defendant knew or should have known that the product was dangerous." Doc. 6 at 13. But Camping World offers no reasoning or analysis as to why the mat was not defective in its attack on this negligence claim. As such, Camping World does not sufficiently raise this argument.

actual or implied knowledge of the defect." 128 So. 2d 390, 392 (Fla. 1961) (original emphasis removed). Without further explanation, Camping World cites to this one sentence and contends that Trophia and Hall "merely conclude[] that Camping World knew or constructively knew of the alleged dangerous condition." Doc. 6 at 14. In *Carter*, the issue before the Supreme Court of Florida was whether a retailer was liable on an implied warranty of fitness to a non-purchaser-user of a product that was not inherently dangerous. 128 So. 2d at 391. The court held that "one who is not in privity with a retailer has no action against him for breach of implied warranty, except in situations involving foodstuffs and perhaps dangerous instrumentalities" and, "[u]nless one of the stated exceptions exists, the injured user of a commodity who is not in privity with the retailer" is "relegated to an action for negligence which in turn requires allegation and proof of fault as distinguished from the absolute liability of an implied warranty." *Id.* at 393.

Camping World fails to explain why the cited sentence of *Carter* warrants dismissing the negligence claim under Rule 12(b)(6). Indeed, that sentence focuses on a retailer's liability to a third party in a negligence action. Camping World does not offer any analysis of *Carter* or its applicability. Given the lack of explanation, Camping World's argument is undeveloped. Further, in discussing knowledge, the Supreme Court of Florida explained in *Carter* that the lack of privity between the parties "precluded the implication of a warranty," thereby "relegat[ing]" the employee to an action for negligence, in which event "it would be necessary for [the employee] to *prove* that the retailer knew, or should have known, of the defective condition of the

17

commodity." *Id.* at 392 (emphasis added). And the court explained that the appellate court correctly held that "*proof* of this element would *support a finding* of fault on the part of the retailer." *Id.* (emphasis added). A plaintiff need not offer proof of her claims to survive a Rule 12(b)(6) motion. And a Rule 12(b)(6) analysis focuses on whether a plaintiff plausibly alleges the elements of her claims. The Court has recognized that, "[i]n the context of products liability, the basic elements of a negligence cause of action apply: (1) duty of care toward the plaintiff; (2) breach of that duty (or negligence); (3) proximate cause," and (4) "the product was defective or unreasonably dangerous." *Marzullo v. Crosman Corp.*, 289 F. Supp. 2d 1337, 1342 (M.D. Fla. 2003) (analyzing a design-defect claim under Florida law); *see Valencia v. Sanborn Mfg. Co., Inc.*, No. 04-21416-CIV, 2005 WL 5957819, at *12 (S.D. Fla. Aug. 11, 2015) (reciting these elements and stating that a "product may be defective by virtue of a design defect, manufacturing defect, or inadequate warning"). Camping World's argument here does not attack any of the elements of the claim. Thus, for all of these reasons, this claim survives to the extent that Trophia brings it.

## IV.   CONCLUSION

Therefore, Camping World's arguments for dismissal largely fall short. But the Court agrees that Hall must bring a separate claim for loss of consortium, rather than seek that relief within Counts I through IV. As such, the Court will provide Trophia and Hall with leave to amend the Complaint.

Accordingly, it is **ORDERED**:

1. Defendant Camping World, Inc.'s Motion to Dismiss Plaintiffs' Complaint (Doc. 6) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2. The Motion to Dismiss is **GRANTED** as to Camping World's loss-of-consortium argument only. Counts I (Breach of Express Warranty), II (Breach of Implied Warranty of Merchantability), III (Strict Liability), and IV (Negligence) are **DISMISSED**, **without prejudice**, **only to the extent that Hall brings those claims**. In all other respects, the Motion to Dismiss is **DENIED**.

3. The Court grants Plaintiffs Samuel J. Trophia and Shane T. Hall leave to file an amended complaint that corrects the deficiencies identified in this order within **FOURTEEN (14) DAYS** from the date of this order. Failure to file an amended complaint within the provided time will result in this action proceeding on Counts I through IV by Trophia only against Camping World.

**DONE AND ORDERED** in Tampa, Florida on July 25, 2022.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any